IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: )<br>CANOPY FINANCIAL, INC., )<br>)<br>Debtor. )<br>)<br>------------------------------------------------------- )<br>)<br>GUS PALOIAN, as Chapter 7 Trustee, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GENEVA SEAL, INC., )<br>)<br>Defendant. )<br>)<br>------------------------------------------------------- )<br>)<br>GUS PALOIAN, as Chapter 7 Trustee, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LESTER LAMPERT, INC., )<br>)<br>Defendant. ) | Case No. 12 C 145<br><br><br><br><br><br>Case No. 12 C 147 | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

    Gus Paloian, as the Chapter 7 Trustee for Canopy Financial, Inc., has moved to strike the jury demands that Geneva Seal, Inc. and Lester Lampert, Inc. have asserted in the adversary proceedings that Paloian initiated against each of them. For the reasons stated below, the Court denies both motions.

**Background**

The Court takes the following facts from the parties' submissions in this proceeding and before the bankruptcy court.

Before it filed for bankruptcy, Canopy was a technology company with a five-member board of directors. Geneva Seal and Lester Lampert ("defendants") are jewelry companies. In the years before the petition, two of Canopy's directors, Jeremy Blackburn and Anthony Banas, caused tens of millions of dollars to be fraudulently transferred from Canopy to themselves and third parties, including defendants and other retailers, to purchase large amounts of luxury goods and services. By the time the other board members discovered this conduct, Blackburn and Banas had transferred most of Canopy's funds, leaving it unable to repay the debts they had incurred on its behalf. The two later pled guilty to wire fraud.

On November 25, 2009, Canopy filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy court subsequently converted the case to a Chapter 7 proceeding and appointed Paloian as the trustee. On March 26, 2010, Paloian filed a complaint against Blackburn and Banas in bankruptcy court. The bankruptcy court later entered final judgments in favor of Paloian and against Blackburn and Banas, finding each liable for nearly one hundred million dollars.

These adversary proceedings arise out of Paloian's assertion that in the summer of 2009, Blackburn and/or Banas used Canopy funds to purchase $100,000 worth of jewelry from Lester Lampert and $232,175 worth of jewelry from Geneva Seal. Paloian contends that because Canopy's money was used without authorization to purchase property that Canopy never received, and because Canopy was actually insolvent on

the date of the transfer, the transfers are fraudulent and Canopy's estate is entitled to a return of the transferred funds.

On October 11, 2011, Paloian filed complaints against both defendants in bankruptcy court. Each defendant filed an answer in which it made a jury demand and stated that it did not consent to a jury trial in the bankruptcy court. The answers also included affirmative defenses in which defendants asserted that they were entitled to "a setoff in the amount of the value of the Jewelry, or in the alternative . . . a return of the Jewelry." *See, e.g.*, Case No. 12 C 147, dkt. no. 9, Ex. A at 33-34. The bankruptcy court entered a pretrial order in both cases, establishing a discovery cut-off date and setting the matter for trial, but it noted that the order was without prejudice to defendants' rights to request withdrawal of the references. On January 19-20, 2012, defendants filed motions asking this Court to withdraw the references of their proceedings to the bankruptcy court on the ground that they did not consent to a trial by jury in bankruptcy court. The Court granted the motions.

## Discussion

Paloian has moved to strike defendants' jury demands on the ground that their affirmative defenses are equivalent to having submitted claims against the bankruptcy estate. According to Paloian, defendants have thereby "brought themselves within the equitable jurisdiction of the bankruptcy court" for purposes of resolving not just their affirmative defenses but also Paloian's underlying claims against them. *See Matter of Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 798 (7th Cir. 1998) (citing *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990)). A creditor who files a proof of claim against a

3

bankruptcy estate is not entitled to a jury trial on that claim. *Id*. Courts have differed, however, regarding whether defendants who assert their right to a setoff as an affirmative defense maintain their right to a jury trial on debtors' claims against them.

Paloian relies primarily on *In re Commercial Financial Services, Inc.*, 251 B.R. 397 (Bankr. N.D. Okla. 2000), a case in which a debtor in possession filed a complaint seeking to recover the amount due on a note. The defendant filed an answer in which he asserted as an affirmative defense that he "may be owed money by [the debtor] which may be set-off or recouped against any amount that he may owe." *Id*. at 400. The court observed that bankruptcy court jurisdiction does not extend to traditional state-law causes of action without the consent of the litigants because "Congress lacks constitutional power to grant final adjudicative authority to Article I courts, such as bankruptcy courts, except in connection with federally created – or 'public' – rights." *Id*. at 403 (citing *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)); *see also Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011) ("Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.") (emphasis in original). "When a defendant sued by a debtor in possession asserts a claim against the estate, however, the bankruptcy court's equitable jurisdiction to adjust the debtor-creditor relationship is invoked." *Commercial Fin. Servs*., 251 B.R. at 404.

The court noted that the defense of setoff "is predicated upon the defendant . . . having a 'valid and enforceable' prepetition claim against [the bankruptcy estate]." *Id*. at

405. The court observed that the defendant's "claim, if proven and allowed, would reduce the recovery [the estate] would obtain for distribution to unsecured creditors." *Id*. at 406. The court concluded that "[b]y pleading setoff as an affirmative defense, [defendant] is in fact asserting a claim against *the estate's right to recover against [defendant]*, which itself is the property of the estate." *Id*. at 405 (emphasis in original). Thus, the defendant's assertion of the defense of setoff had invoked the bankruptcy court's jurisdiction and effected a waiver of the right to jury trial on the trustee's claims because the defense amounted to a claim against the estate. *Id*. at 408 (citing *Langenkamp*, 498 U.S. at 45).

By contrast, defendants point to *In re Concept Clubs, Inc.*, 154 B.R. 581 (D. Utah 1993). In that case, a bankruptcy trustee sued a company for damages based on breach of an agreement between them and for return of funds the company held. The company asserted that it was entitled to a setoff for the trustee's violations of the agreement and "revenues and property allegedly converted by the Chapter 11 trustee that belonged to" the company. *Id*. at 583. The court concluded that "setoff raised as an affirmative defense only reduces, or extinguishes, the amount sought by the trustee for the estate" and therefore that "the bankruptcy court's equitable jurisdiction is not required because setoff as a *defense* does not involve the claims allowance process." *Id*. at 589 (emphasis in original). Thus, the defendant was entitled to a jury trial on the trustee's claim.

Another judge in this district considered this issue in an adversary action by a debtor to recover unpaid receivables in which the defendant "asserted as an affirmative

5

defense that it [was] entitled to setoffs for liabilities and expenses arising out of products liability and patent infringement cases involving products sold by" the debtor. *In re Hedstrom Corp.*, Nos. 04-38543, 05 C 6888, 2006 WL 1120572, at *1 (N.D. Ill. Apr. 24, 2006). The judge found the holding of *Commercial Financial Services* more persuasive than that of *Concept Clubs*. He concluded that whether the debtor "writes [defendant] a check or cancels [defendant's] receivable, the end result is the same: the bankruptcy estate will be significantly diminished." *Id*. at *3. "Because [defendant's] claimed setoff directly impacts the distribution of the bankrupt's assets, the Court holds that it falls within the bankruptcy court's core jurisdiction." *Id*.

The rationale of the court in *Hedstrom* implies that any so-called "setoff" that has any effect on the assets of a bankruptcy estate must be adjudicated by a bankruptcy court. This Court respectfully concludes that this goes beyond the holding of *Commercial Financial Services*. As noted above, the analysis of a setoff in *Commercial Financial Services* depended on a definition of that term that entails "the defendant . . . having a 'valid and enforceable' prepetition claim against" the debtor. *Commercial Fin. Servs.*, 251 B.R. at 405 (citations omitted). The assertion by the defendant in that case that the debtor otherwise owed him money appears to have been important to the court's decision. *Id*. at 406 ("[F]rom a logical and equitable standpoint, a defendant cannot assert that he and the debtor have 'mutual debts and claims' for the purpose of setoff without asserting a claim against the estate.") (citing 11 U.S.C. § 553(a)(1)).

Under this analysis, the court in *Hedstrom* reached the correct outcome by virtue of the fact that the debtor and the defendant were asserting mutual claims against each

other. The debtor asserted a claim to recover receivables, and the defendant asserted a claim for liabilities and expenses arising out of a separate lawsuit. Because the defendant's assertion that it was entitled to an offset was based on a separate, prepetition claim, it amounted to a claim against the bankruptcy estate. *See also In re N. Am. Energy Conservation, Inc.*, No. 00-40563, 2000 WL 1514614, at *1-2 (S.D.N.Y. Oct. 12, 2000) (weighing debtor's claim for money owed for delivered goods against defendant's setoff claim for breach-of-contract damages).

This dynamic is explored further in *Container Recycling Alliance v. Lassman*, 359 B.R. 358 (D. Mass. 2007). In that case, a debtor brought affirmative claims against a company based on the company's alleged breach of a commercial lease. The company raised affirmative defenses, including setoff, as well as counterclaims for separate alleged breaches by the debtor of the same contract. The court determined that the company's setoff defense was more properly understood as an assertion of the right to recoupment:

> The law dictionary defines "setoff" as a "counter-claim demand which defendant holds against plaintiff, arising out of a transaction *extrinsic to plaintiff's cause of action*." . . . "Recoupment," on the other hand, is "a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant *arising out of the same transaction*." . . .
>
> Recoupment, [unlike setoff], is not a mechanism which reduces mutual debts "for the sake of convenience," but rather is "in the nature of a defense" and is intended to "permit . . . judgment to be rendered that does justice in view of the one transaction as a whole." As such, when a debtor in bankruptcy seeks to recover from a creditor whose claim against the debtor arises out of the same transaction, allowing the creditor to recoup damages simply allows the debtor precisely what it is due when viewing the transaction "as a whole."

*Id*. at 363-64 (quoting *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*, 9 F.3d 996,

998-99 (1st Cir. 1993) (Breyer, J.) (emphasis in original)).

The court in *Container Recycling Alliance* concluded that the debtor's claims and the company's counterclaims both arose out of the same transaction – the commercial lease. Although the court conceded that the counterclaims might have an effect on the value of the bankruptcy estate, it distinguished *Commercial Financial Services* on the ground that "reducing the trustee's claims to the amount that he justly ought recover when the transaction is viewed as a whole is more properly seen as a part of the process of ascertaining the true value of the estate, not as an attempt to obtain a distribution from it." *Id*. at 364.

Other courts have echoed this reasoning. A bankruptcy judge in this district recently acknowledged that "[c]ourts have consistently held that counterclaims and defenses filed in an adversary proceeding seeking *affirmative* relief from a debtor's estate constitute claims against the bankruptcy estate that divest the defendant of the right to a jury trial." *In re Auto. Prof'ls, Inc.*, 389 B.R. 621, 629 (Bankr. N.D. Ill. 2008) (emphasis added). The court concluded, however, that although the defendant in the case before it had raised a defense of contribution, the substance of its argument was "a failure of a condition subsequent . . . to [its] duty to pay under the contract." *Id*. This was an "assertion that [defendant] does not owe [debtor] under the contract [and therefore] an affirmative defense to the Trustee's claims, not a counterclaim seeking a recovery from [debtor's] estate." *Id*. at 630. *Cf. In re Big Springs Realty LLC*, 430 B.R. 629, 635 (Bankr. D. Mont. 2010) ("[T]he Court finds that even though [defendant] has not filed a formal proof of claim in this case, [defendant] has nevertheless, through his

8

affirmative defense[] of setoff . . . , sought more than a fair accounting of the amount that [plaintiff] is entitled to under her claims against [defendant].").

In the present case, there is no indication that defendants' assertion of setoff is anything other than a contention that they should not have to give up the money they received for the jewelry without having the jewelry or its value returned to them. This is not an argument that they are entitled to a setoff based on anything that could serve as the basis for a counterclaim or any kind of separate claim against the debtor or the estate. Defendants have not contended that Canopy's estate owes them a debt of any kind. If Paloian had not initiated these actions against them, there would have been no basis for a lawsuit going the other way, unlike each of the cases in which courts determined that a setoff defense waived the right to a jury trial. As such, defendants' claim of "setoff" appears to fit perfectly within then-Judge Breyer's definition of recoupment, as quoted in *Container Recycling Alliance*.

"In determining whether a party has waived its right to a jury trial, courts look past the technical title of a defense or counterclaim and instead focus on the actual substance of the pleading to determine whether it is a claim against the bankruptcy estate." *Auto. Prof'ls.*, 389 B.R. at 629-30. Regardless of what it is called, under the cases discussed above – including both *Commercial Financial Services* and *Concept Clubs* – it is clear that the substance of defendants' affirmative defenses does not amount to the assertion of a claim against the bankruptcy estate. Whether the defenses are viable, of course, remains to be seen, but either way they do not amount to a waiver by defendants of their right to a jury trial in these matters.

**Conclusion**

For the foregoing reasons, the Court denies plaintiff's motions to strike defendants' jury demands [Case no. 12 C 145, docket no. 22; case no. 12 C 147, docket no. 16]. The cases remain set for a status hearing on April 5, 2012, at 9:30 a.m. to set a schedule for further proceedings.

```
                                      _____
                                      MATTHEW F. KENNELLY
                                      United States District Judge
```

Date: April 2, 2012